UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FEDER KASZOVITZ LLP,

          Plaintiff,

    -against-

LEE S. ROSEN,

          Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

17-CV-2954 (CM) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE

**PROCEDURAL HISTORY**

*MEMO ENDORSED*

Feder Kaszovitz LLP ("FK") commenced this action against Lee S. Rosen ("Rosen") asserting the following causes of action arising from Rosen's failure to pay legal fees and costs for services provided by FK in a matter captioned "*Alpha Capital Anstalt v. New Generation Biofuels, Inc., and Lee S. Rosen, et al.*" (the "Alpha Capital matter"): (1) breach of contract; (2) account stated; and (3) quantum meruit. FK asserted that Rosen paid FK $45,000 for FK's legal services, leaving a balance of $160,658 unpaid. Rosen answered and asserted counterclaims for breach of contract and fraud in the inducement. FK's motion for summary judgment on its breach of contract cause of action was granted, quantum meruit cause of action was dismissed and account stated cause of action found to be duplicative of the cause of action for breach of contract. See Docket Entry No. 37. FK's motion for summary judgment on Rosen's counterclaims was granted, and Rosen's counterclaims were dismissed. See Docket Entry No. 60. The matter was referred to the undersigned for an inquest on damages. FK filed its pre-hearing submission, and an inquest hearing was conducted, on October 24, 2018, at which David

4/22/2019
No objections have been timely filed. The Magistrate Judge's report is adopted as the decision of the court. Clerk to enter judgment for plaintiff in the amount of $160,658, and to close case! Colleen McMahon USDJ

Sack, FK's attorney, testified. See Docket Entry Nos. 52 and 57. FK seeks $160,658, or alternatively, $143,525. Rosen contends that the total amount sought by the plaintiff should be reduced "at a bare minimum" by "56,197," and FK "should get half of . . . $143,000."

**INQUEST HEARING**

Upon the parties' agreement, the Court received the following exhibits in evidence at the inquest hearing: (i) the plaintiff's' Exhibit A, "the retainer letter," Bates numbers FK00001 to FK00003, and Exhibit B, "the invoice," Bates numbers FK00043 to FK00062; and (ii) the defendant's Exhibit No. 1, Bates numbers FK00182 to FK00186, Exhibit No. 2, "Memorandum of Law in Support of Defendant Lee S. Rosen's Motion to Dismiss the Complaint," Exhibit No. 3, "Memorandum of Law in Support of Defendant Lee S. Rosen's Motion to Dismiss the First Amended Complaint," Exhibit No. 4, Bates numbers FK00041 and FK00044 to FK00062, and Exhibit No. 5, Bates numbers FK00090 to FK00096.

On direct examination, Sack testified that the billing rates in the parties' retainer agreement are consistent with the billing rates in FK's September 2, 2014 invoice submitted to Rosen, and he was unaware of any question raised by Rosen with respect to the billing rates. Sack explained that the time and billing records are created contemporaneously with the work performed and entered into the computer system Real World, which generates a bill for each matter, identifying each attorney and paralegal who worked on the matter, that person's billing rate, hours billed for each day and a description of the task(s) performed. Sack testified that the amount remaining due on the September 2, 2014 invoice is $160,658, calculated by: (1) subtracting from $187,477.75, the total amount due for legal services from inception through May 31, 2014, $42,500, the sum of the amounts Rosen paid on October 29, 2013 ($7,500), February 22, 2014 ($25,000) and May 19, 2014 ($10,000), resulting in $144,977.75; and (2)

2

adding $15,680.38, the amount of disbursements "through July 31, 2014," to $144,977.75. Sack acknowledged that FK's invoice "rendered in December" offered a discount in the amount of $16,933, "to essentially conduct one phase of the litigation which was the first motion to dismiss for a rate of $45,000. Mr. Rosen's payments, if you add up the payments that are reflected on page FK00044, add up to $42,500." Sack testified that the discount offered in the December invoice was not included in the September 2, 2014 invoice.

On cross-examination, Sack testified that his involvement in the matter at issue was "limited to a few hours of research." Sack stated that he was not aware of Rosen's complaint about the rates set forth in the retainer agreement and acknowledged that the record evidence indicates that Rosen complained "many times about the overall cost." Sack stated that Rosen settled for $75,000, the claims against him in the Alpha Capital matter, in which $1.19 million in damages were sought. He testified that $187,477.75, the total amount billed Rosen by FK, includes fees for Rosen's two motions to dismiss. Sack was questioned about time entries in Rosen's Exhibit No. 4, Bates number FK00048, marked as "research" by an attorney whose initials are "I.R," namely, $1,275, marked on November 4, 2013, and $850, marked on November 6, 2013. He testified that those two entries are not his and he did not know that the description of time entries as "research" was "necessarily inadequate." Sack was also asked about time entries by an attorney whose initials are "J.H" in Rosen's Exhibit No. 4: (a) $4,410, Bates number FK00058, marked on March 19, 2014, as "motion to dismiss papers"; and (b) $2,160, Bates number FK00059, marked on May 21, 2014, as "reply" and he confirmed the description of those time entries. On re-direct, Sack testified that he had not seen anything in the record indicating that Rosen raised any question with respect to any charges in FK's Exhibit B.

3

## FINDINGS OF FACT

On October 23, 2013, Rosen signed an agreement retaining FK to represent him in the Alpha Capital matter. The retainer agreement indicates that "present hourly rates for lawyers in our firm range from $185 to $585 and the rates for non-lawyer personnel currently range between $115 and $135 per hour," and "[t]hese rates are subject to periodic adjustment of billing rates for attorneys, increased costs affecting our practice and enhanced expertise and experience of the lawyers and other personnel working on the matter.". The retainer agreement also provides, inter alia:

> Our statements for legal services will be rendered periodically. . . . Statements will include itemized charges for expenses and services such as filing fees, duplicating, messenger and delivery services, overnight mail, travel, staff overtime and computerized legal research. . . . In the event that claims result in litigation, we also may forward to you, for your direct payment certain invoices or charges (e.g., deposition expenses, expert fees, court reporting charges, filing fees, etc.) received by us from third parties acting for your benefit. You shall be responsible for making these direct payments in a timely manner. You authorize us to incur all such costs as are reasonable and necessary to our representation. Please note that there are often delays in reporting disbursements and other charges, and not all such charges will be billed at the same time as the related legal services. Our statements are due and payable upon receipt of the invoice. For accounts not paid within 30 days of the invoice date, we reserve the right to add a late payment charge of 1% per month (or such lower rate as required by applicable law). In the event our invoices are not paid within 45 days, you agree that such non-payment will constitute a breach of our engagement agreement and will be considered cause for our seeking to be relieved from further representing you in any litigation we may be then handling. We have requested an initial retainer in the sum of $7,500 and we hereby enclose our invoice for this amount. This initial retainer will be applied against our final statement with the difference, if any, returned to you.

The September 2, 2014 invoice FK submitted to Rosen indicates the following:

| | | |
|---|---|---|
| Statement for Professional Services Rendered | | $187,477.75 |
| From inception through May 31, 2014 | | |
| Payments Received: | | |
| October 29, 2013 | -$7,500.00 | |
| February 22, 2014 | -25,000.00 | |
| May 19, 2014 | -10,000.00 | |
| Less Payments Received | | -42,500.00 |

4

| | |
|---|---|
| Total | 144,977.75 |
| Disbursements (through July 31, 2014) | 15,680.38 |
| AMOUNT DUE | $160,658.00[1] |

## CONCLUSIONS OF LAW

*Legal Standard*

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather, damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). "In a breach of contract action, the non-breaching party is generally entitled to compensatory damages to place it in the same position it would have occupied had the breaching party satisfied its obligations under the contract." Vill. of Ilion v. Cty of Herkimer, 23 N.Y.3d 812, 822-23, 993 N.Y.S.2d 648, 654 (2014).

*Application of Legal Standard*

At the inquest hearing, Rosen did not challenge the accuracy of FK's time records; rather, he challenged the reasonableness of the attorney's fees incurred as indicated in FK's time

---

[1] The sum of $144,977.75 and $15,680.38 is $160,658.13. The resulting amount appears to be rounded to the closest full dollar amount of $160,658.00.

5

records. However, the purpose of the inquest on damages based on Rosen's breach of contract is to determine the amount of damages, not the reasonableness of the attorney's fees. Rosen's attorney stated in his closing statement at the inquest hearing that "there's the previous discount that's referenced in Judge McMahon's decision, and she says – and I guess the plaintiff has conceded that that $16,933 should come off any number awarded." Rosen is mistaken because: (1) your Honor did not make any findings concerning the amount of damages but referred the matter to the Court to do so; and (2) FK did not concede "that that $16,933 should come off any number awarded." Although FK indicated "Less Courtesy Discount (20%)" in the December 17, 2013 invoice, FK did not include that discount in its September 2, 2014 invoice to Rosen. Rosen did not inquire of Sack about Rosen's Exhibit No. 5, including the: (i) December 17, 2013 invoice; (ii) discount offered in the December 17, 2013 invoice; or (iii) omission of the discount offered in the December 17, 2013 invoice from the September 2, 2014 invoice. Thus, the meaning and the relevance of the content of Rosen's Exhibit No. 5 to the September 2, 2014 invoice, whose accuracy is not challenged, is unknown. The Court finds that FK established with reasonable certainty, that the amount of damages on its breach of contract cause of action is $160,658.

## RECOMMENDATION

For the foregoing reasons, I recommend that $160,658 in damages be awarded to FK.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

6

Colleen McMahon, 500 Pearl Street, Room 2550, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge McMahon. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
April 4, 2019

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE